## UNITED STATES  DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**ARTHUR EUGENE GILLUM, JR.**                    **CIVIL ACTION**

**VERSUS**                                       **NO.  12-1973**

**SHERIFF MARLIN N. GUSMAN, ET. AL**             **SECTION "R" (4)**

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to **28 U.S.C. § 636(b)(1)(B) and (C), § 1915(e)(2), and § 1915A**, and as applicable, **42 U.S.C. § 1997e(c)(1) and (2)**. Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.

On September 25, 2012, the undersigned Magistrate Judge conducted a hearing pursuant to *Spears v. McCotter,* 766 F.2d 179 (5th Cir. 1985) and its progeny. The plaintiff, Arthur Eugene Gillum, Jr., ("Gillum") and counsel for the defendants participated by telephone.

I.      **Background**

    A.      **Factual Background**

The plaintiff, Arthur Eugene Guillum, Jr. ("Guillum"), filed this *pro se* and *in forma pauperis* complaint pursuant to 42 U.S.C. § 1983 against Sheriff Marlin N. Gusman, ("Sheriff Gusman"), Dr. Higgins - a Psychiatrist at the Orleans Parish Prison, Dr. Gore - the alleged Medical Director of the prison, Dr. Gray - the alleged nurse practitioner or physician at the prison, Warden C. Golini ("Warden Golini"), Orleans Parish Prison ("OPP" or "the prison") and Orleans Parish Prison Medical Department ("the Medical Department").[1]

Gillum alleges that he filed suit against Sheriff Gusman because of his role as a supervisory

_____

[1]Rec. Doc. No. 1 and 8.  Gillum was incarcerated in OPP in New Orleans, Louisiana, but has since been released.

official over Orleans Parish Prison ("the Prison"), and for allegedly permitting Dr. Higgins, Dr. Gore, Dr. Gray and the Medical Department to disregard his medical needs. Specifically, he alleges that the defendants refused to provide him with his psychiatric medication, although his medical records from Chartres Pontchartrain Mental Health Clinic indicated that he needed them.[2]

On August 24, 2012, Gillum filed a "First Amendment" of his Complaint. In his complaint, Gillum alleges that on February 12, 2012, he was bitten by a spider on the right side of his lip.[3] He further alleges that on February 13, 2012, he completed a sick call request, regarding the spider bite. On February 19, 2012, Gillum alleges that he was seen by a physician who confirmed his spider bite, and prescribed an antibiotic, Bactrim, for ten (10) days. Gillum also alleges that during "this period" - which is undefined - he suffered from pain and feared that his condition would worsen.[4]

Gillum's complaint also alleges that on May 10, 2012, he twisted his back while trying to break his fall in the shower. He alleges that he completed a sick call request and filed a grievance form to complain about the slippery nature of the shower and his back. As a result of this near incident, he allegedly experienced pain in his side and back for one to two weeks.[5] On June 10, 2012, Gillum allegedly twisted his back again while attempting to break his fall in the shower. He allegedly completed another sick call and grievance form but allegedly never received a response regarding either grievance.

Gillum's complaint lists a host of allegations about the conditions of the prison; including claims that the prison has unsanitary practices, that he has been denied access to recreation, that the

---

[2]R. Doc. 1, p. 19.

[3]The Court granted Gillum's oral request for leave to file the First Amended Complaint during the September 25, 2012 *Spears hearing*.

[4]R. Doc. 8, pp. 1-2.

[5]R. Doc. 8, pp. 2-3.

prison grievance procedures are inadequate, that the prison's legal assistance program is inadequate, that the nurses and prison deputies are overworked, understaffed and undertrained, and that the medical service provided is inadequate.

He claims the conditions of his confinement are unsanitary because inmates are provided with a single set of utensils without a means of cleaning or obtaining a replacement.[6]  Specifically, he alleges that inmates are provided with a single spoon and if an inmate's spoon is accidentally lost, or gets dirty, the inmate is not provided with a replacement.

He  alleges that he had been confined for six months, and that during this period he has only been permitted to go outside onto the yard on four occasions. He therefore alleges that he has been forced into idleness, which has caused his health and the condition of his muscles to deteriorate.[7]

Gillum contends that because inmates are not provided with copies of the prison's grievance procedure and that the prison grievance procedures are inadequate. He also alleges that the legal assistance program at the prison is inadequate, as inmates are not provided with paper or other supplies. Rather, Gillum claims that the only assistance provided to inmates by this program consists of inadequate legal advisors.[8]

Gillum's compliant alleges that the prison deputies and nurses are overworked, understaffed and untrained.[9] He alleges that within an hour of the deputies arrival at the prison, they allegedly leave the inmates unmonitored to sleep, which places the inmates health care and well-being in jeopardy.

---

[6]*Id.* at 3.

[7]R. Doc. 8, p. 4.

[8]*Id.*

[9]*Id.* at 5.

[10] He also alleges that because the deputies work between two to four tiers most of the time, several tiers are left unattended which also places inmates in potential jeopardy.

With regard to the nurses, Gillum also alleges that they are unable to provide adequate medical service and have a bad attitude. He further alleges that the medical intake procedure at the prison for all medical conditions are inadequate, as inmates must wait a long time before receiving examinations. Specifically, he alleges that the procedures for screening, diagnosis, sick call, examinations, and distribution of medication, places the health and lives of inmates in jeopardy.

He also contends that the defendants stopped giving him his psychiatric medication, which consists of Seriquil, Lexapro, and Wellbutrin; although they first gave it to him consistently for a month. [11] Finally, he contends that for two days after his arrest he was forced to sleep on an "iron bed without a mattress," which caused him to develop a cold and chest pain.[12]

As a result of his allegations, Gillum seeks to be awarded attorneys fees, court costs, actual, nominal, punitive and compensatory damages in the amount of three hundred thousand dollars ($300,000). Gillum also seeks to invoke supplemental jurisdiction of this Court to attach to his "state and city law" claims, as well as any other relief he may otherwise be entitled to receive.[13]

**B**.    ***Spears* Hearing**

On September 25, 2012, the undersigned conducted a *Spears* hearing in this matter.[14] Gillum, age 51, testified that he entered the prison on February 10, 2012, after being charged with forcible

---

[10]*Id.*

[11]*Id.* at 6.

[12]*Id.*

[13]*Id.* at 7-8.

[14]R. Doc. 24.

rape.[15] He testified that the forcible rape charges were later dismissed, however, he remains incarcerated on charges of aggravated battery, for which he pled guilty, against the same individual who accused him of forcible rape. He is currently serving an eighteen month sentence.

During the hearing, Gillum alleged problems with his intake interview at the prison. Specifically, he stated that the interview consisted of one question, asking how he was doing. Gillum represented to the interviewer that he had not received his prescribed medications, Depacote, Lexapril, Benadryl and high blood pressure medication,[16] for quite some time, although he had signed a medical release.

He alleges that because he had not received his blood pressure medication, his head began to hurt badly and he demanded treatment.  Four days after his arrest, his blood pressure was apparently taken by officials at the prison, as Gillum contends that after this occasion, he began receiving his blood pressure medication again. He also testified that he was prescribed Clonadin.

During the hearing, he also complained that there was a delay in removing his broken tooth and his partial denture plate. He also alleged that Deputy Barnes, an unidentified prison personnel, threw away his plate. He stated that after complaining about his broken tooth he was informed that his tooth could not be removed because he had elevated / high blood pressure. Gillum testified that he requested a nurse to take his pressure again, but that it took several months before a nurse confirmed that his pressure was not elevated, allowing for the dentist to remove his tooth.  However, he does admit that once a nurse confirmed that his blood pressure was not elevated, he visited the dentist and had one tooth pulled. As of the date of the hearing, he had no other dental complaints.

Gillum testified that he was diagnosed with bipolar disorder in 2006. Because of this condition,

---

[15]*Id.*

[16]Gillum testified to taking these prescription medications during the hearing.

he was moved to the psychiatric floor / tier of the prison. He testified that he has been functioning well in this environment ever since he has been receiving his bipolar disorder medication.

When asked about the defendants in this matter, Gillum testified that he did not recall why he sued Sheriff Gusman. He testified that he sued Dr. Higgins, because he was slow in providing him with the psychiatric medication he prescribed. He testified that he sued Dr. Gore and Dr. Gray because they did not respond to his request for medical services.

When asked about the allegations in his complaint, Gillum reiterates that he was bitten by a spider in February 2012. Although his injury was resolved by the Medical Department, he testified that the treatment was slow. In fact, he testified that he only received medical treatment after his lip began to swell.

Gillum reiterated during the hearing that because of the lack of staff, the dispensing of his medication is inconsistent. He testified that sometimes his medication is administered timely, while other times it not administered until late at night. Gillum also testified that he has been denied his right of access to the court, because he was not provided copies of cases or access to any law books.

Gillum testified that the grievance procedure takes too much time, as it allegedly took four months for him to receive a response to the grievance he filed. He reiterated during the hearing that he was on the tier for almost seven months and was allowed outside on only four occasions because of the understaffed prison.

As to Gillum's allegations that the prison has unsanitary practices, he acknowledges that he has not been harmed as a result of any unsanitary conditions. However, he testifies that there is mold all over the shower floors, which he brought to the attention of the defendants, but his complaint, was not responded to for two months. He also testified that the inmates utensils consist of one spoon and one fork, for which he does not have access to water to clean the utensils. Lastly, he testified that he

only slept on an iron bed for two days without a mattress.

## II.     Standards of a Frivolousness Review

Title 28 U.S.C. § 1915A and Title 42 U.S.C. §§ 1997e(c)(1) require the Court to *sua sponte* dismiss cases filed by prisoners proceeding *in forma pauperis* upon a determination that they are frivolous or otherwise fail to state a claim for which relief can be granted. The Court has broad discretion in determining the frivolous nature of the complaint. *See Cay v. Estelle*, 789 F.2d 318 (5th Cir. 1986), *modified on other grounds, Booker v. Koonce*, 2 F.3d 114 (5th Cir. 1993). However, the Court may not *sua sponte* dismiss an action merely because of questionable legal theories or unlikely factual allegations in the complaint.

Under this statute, a claim is frivolous only when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319 (1989); *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998). A claim lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist. *Harper v. Showers*, 174 F.3d 716, 718 (5th Cir. 1999). It lacks an arguable factual basis only if the facts alleged are "clearly baseless," a category encompassing fanciful, fantastic, and delusional allegations. *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992); *Neitzke*, 490 U.S. at 327-28. Therefore, the Court must determine whether the plaintiff's claims are based on an indisputably meritless legal theory or clearly baseless factual allegations. *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994); *see Jackson v. Vannoy*, 49 F.3d 175, 176-77 (5th Cir. 1995); *Moore v. Mabus*, 976 F.2d 268, 269 (5th Cir. 1992).

## III.    Analysis

### A.     Orleans Parish Prison and Prison Medical Department

Gillum names both the Orleans Parish Prison and the Orleans Parish Prison Medical Department ("the Medical Department") as defendants in this action. However, neither the Prison nor

the Medical Department are persons within the meaning of Title 42 U.S.C. §1983.

Section § 1983 imposes liability on any "person" who violates someone's constitutional rights "under color of law." *See* Title 42 U.S.C.§ 1983; *see Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989). In accordance with Rule 17(b) of the Federal Rules of Civil Procedure, Louisiana law governs whether these defendants can be sued.[17] Under Louisiana law, to possess such a capacity, an entity must qualify as a "juridical person." This term is defined by the Louisiana Civil Code as an "entity to which the law attributes personality, such as a corporation or partnership." *See* LA. CIV. CODE ANN. art. 24.

Thus, under federal law, a county (or parish) prison facility is not a "person" within the meaning of Rule 17. *Cullen v. DuPage County*, No. 99C1296, 1999 WL 1212570, at *1 (N.D.Ill.Dec. 14, 1999)*; Whitley v. Westchester County Corr. Facility Admin.,* No. 97CIV0420(SS), 1997 WL 659100, at *6 (S.D.N.Y. Oct. 22, 1997); *Powell v. Cook County Jail*, 814 F.Supp. 757, 758 (N.D.Ill.1993). A parish jail is, as this Court has previously described, "not an entity, but a building." *See Jeffries v. St. Bernard Parish Sheriff's Dep't*, No.12-1063, 2013 WL 6044365 at *4 (E.D. La. Nov. 13, 2013); citing *Jones v. St. Tammany Parish Jail,* 4 F. Supp.2d 606, 613 (E.D.La.1998) (dismissing St. Tammany Parish Jail with prejudice); *Dale v. Bridges,* No. 96–3088, 1997 WL 810033, at *1 n. 1 (N.D.Tex. Dec. 22, 1997) (county jail is not a jural entity capable of being sued), *aff'd,* 154 F.3d 416, 1998 WL 526620 (5th Cir. July 21, 1998).

Thus, neither the Orleans Parish Prison nor the Medical Department are proper Defendants in this case. As such, Gillum's claims against the Parish Prison and the Medical Department should be dismissed with prejudice as frivolous and for failure to state a claim for which relief can be granted

---

[17]Rule 17(b) of the Federal Rules of Civil Procedure provides that "capacity to sue or be sued shall be determined by the law of the state in which the district court is held." *See* Fed. R. Civ. P. 17(b).

pursuant to § 1915(e), § 1915A, and § 1997e. *See Jones v. St. Tammany Parish Jail,* 4 F.Supp.2d 606, 613 (E.D.La.1998)(dismissing with prejudice the St. Tammany Parish Jail as an improper defendant).

### B.   Sheriff Gusman

Gillum names Sheriff Gusman as a defendant in this case. Under a broad reading of his complaint, he likely named Sheriff Gusman as a defendant because of his role as a supervisory official over Orleans Parish Prison ("the Prison"). Gillum alleges that although he filed internal grievances about prison conditions through the prison's internal grievance process, he did not receive any relief.

A supervisory official, like Sheriff Gusman, would not be held liable pursuant to § 1983 under any theory of *respondeat superior* simply because an employee or subordinate, whether a deputy or doctor, allegedly violated the plaintiff's constitutional rights. *See Alton v. Texas A&M Univ.*, 168 F.3d 196, 200 (5th Cir. 1999); *see also Baskin v. Parker*, 602 F.2d 1205, 1220 (5th Cir. 1979). He may be liable under § 1983 only if he "was personally involved in the acts causing the deprivation of his constitutional rights or a causal connection exists between an act of the official and the alleged constitutional violation." *Douthit v. Jones*, 641 F.2d 345, 346 (5th Cir. 1981) (citing *Sims v. Adams*, 537 F.2d 829, 831 (5th Cir. 1976)); *see also Watson v. Interstate Fire & Cas. Co.*, 611 F.2d 120 (5th Cir. 1980).

In applying this standard, the Court's have held that "the prisoner must show that the defendants (1) were aware of facts from which an inference of an excessive risk to the prisoner's health or safety could be drawn and (2) that they actually drew an inference that such potential for harm existed." *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998) (citing *Farmer*, 511 U.S. at 837). "Under exceptional circumstances, a prison official's knowledge of a substantial risk of harm may be inferred by the obviousness of a substantial risk." *Id.* (citing *Farmer*, 511 U.S. at 842 & n.8).

The Supreme Court has recently reaffirmed that "'deliberate indifference' is a

9

> **stringent** standard of fault, requiring proof that a municipal actor disregarded a known
> or obvious consequence of his action. . . ." The "deliberate indifference" standard
> permits courts to separate omissions that "amount to an intentional choice" from those
> that are merely "unintentionally negligent oversight[s]."

*Southard v. Tex. Bd. of Crim. Just.*, 114 F.3d 539, 551 (5th Cir. 1997) (quoting, e.g., *Bd. of County*

*Comm'rs v. Brown*, 520 U.S. 397 (1997)) (citations omitted) (emphasis added).

Here, Gillum has not alleged any facts which would indicate that Sheriff Gusman was personally involved in his allegations of inadequate medical care, denial of access to the law library, unsanitary practices of the prison, the conditions of his confinement - the unclean utensils, the slipperiness of the showers - or his claims regarding denial of access to the law library. An official is deliberately indifferent to an inmate's medical needs or safety in violation of the Eighth Amendment "only if he knows that the inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994).

Gillum has not indicated or alleged that Sheriff Gusman was personally aware of his medical condition, treatment, or risk to his personal safety. Therefore, Gillum has not demonstrated a connection between his claims and Sheriff Gusman that would create liability under § 1983. Thus, Gillum's claims against Sheriff Gusman should be dismissed with prejudice as frivolous and for failure to state a claim for which relief can be granted pursuant to § 1915(e), § 1915A, and § 1997e.

**C.     Dr. Higgins, Dr. Gore, and Dr. Gray**

Gillum names Dr. Higgins - a Psychiatrist at the Orleans Parish Prison ("Dr. Higgins"), Dr. Gore - the alleged Medical Director of the prison ("Dr. Gore"), and Dr. Gray - the alleged nurse practitioner or physician at the prison ("Dr. Gray") as defendants in this action.

The claims against Dr. Higgins, Dr. Gray and Dr. Gore arise from Gillum's alleged delay in receiving his prescription medications. Specifically, Gillum alleges that the four day delay in receiving his blood pressure and psychiatric medications upon his arrival in prison, as well as the delay in

receiving the antibiotic Bactrim, for his spider bite constitute medical indifference.

He alleges that Dr. Higgins was "slow" in administering his bipolar disorder medication and that Dr. Gray was slow and inconsistent in administering his blood pressure medication and treating his spider bite. However, during the *Spears* Hearing, Gillum testified that if he did not receive his medication on time, he would notify the nurse, insist on receiving his medications and would ultimately receive his medication later that same day. He also alleges that the inadequacy in the dental services he received constitute medical indifference, as officials were "slow" in pulling his tooth.

The Court recognizes that the standard of conduct for providing medical care to inmates under the Eighth Amendment was clearly established by the Supreme Court in *Estelle v. Gamble*, 429 U.S. 97 (1976). In *Estelle*, the Court held that deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary wanton infliction of pain," proscribed by the Eighth Amendment. *Id.* at 104 (internal quotation marks omitted). This is true where the indifference is manifested by prison doctors in their response to the prisoner's needs. It is also true where the indifference is manifested by prison officials in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. *Id.* Medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference. *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995) (citing *Mendoza v. Lynaugh*, 989 F.2d 191, 193-95 (5th Cir. 1993)).

In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment. *Id*. Further, disagreement with medical treatment does not state a claim for Eighth Amendment indifference to medical needs. *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006); *Domino v. Tex. Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001); *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997). Therefore, inadequate medical treatment of inmates, at

a certain point, may rise to the level of a constitutional violation, while malpractice or negligent care does not. *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir. 1999); *Mendoza*, 989 F.2d at 193 ("It is clear that negligent medical treatment is not a cognizable basis upon which to predicate a section 1983 action."); *Williams v. Treen*, 671 F.2d 892, 901 (5th Cir. 1982) ("mere negligence in giving or failing to supply medical treatment would not support an action under Section 1983." (emphasis added)); *see also Jackson v. Cain*, 864 F.2d 1235, 1246 (5th Cir. 1989).

In this case, Gillum has not stated a cognizable claim for relief against Dr. Gray, Dr. Higgins or Dr. Gore, as he has not alleged acts or omissions which would show sufficient evidence that they acted "deliberately indifferent" to his medical needs in violation of the Eighth Amendment. Although Gillum initially alleges that he was not treated by anyone at the prison, his testimony from the *Spears* hearing confirms that he received medications to treat his medical conditions, including his spider bite. His mere disagreement with the Medical Department's timing of the treatment does not state a claim for Eighth Amendment indifference to medical needs. *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006); *Domino v. Tex. Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001); *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997).

As such, Gillum has not presented allegations sufficient to state a claim for deliberate indifference as to the adequacy of his medical and dental care. Therefore, his claims against Dr. Higgins, Dr. Gore and Dr. Gray should be dismissed with prejudice as frivolous and for failure to state a claim for which relief can be granted pursuant to § 1915(e), § 1915A, and § 1997e.

### D.    The Conditions of Confinement

In his Amended Complaint, Gillum asserts allegations about the conditions of his prison confinement. Specifically, he alleges that the shower floor is moldy, that inmates are provided with one pair of utensils without a means to clean them, and that he was forced to sleep on an iron bed with

out a mattress for two days, which allegedly caused him to develop a cold.

The Eighth Amendment protects against cruel and unusual punishment. "Prison conditions constitute cruel and unusual punishment if they involve the 'wanton and unnecessary infliction of pain [or if they are] grossly disproportionate to the severity of the crime warranting imprisonment.'" *Hamilton v. Lyons*, 74 F.3d 99, 103-04 (5th Cir. 1996) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)); citing *Estelle v. Gamble*, 429 U.S. 97, 103 (1976); *Hutto v. Finney*, 437 U.S. 678, 687 (1978)). Like other Eighth Amendment claims, a conditions of confinement claim must satisfy tests for both objective and subjective components. *Davis v. Scott*, 157 F.3d 1003, 1006 (5th Cir. 1998) (citing *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)); *accord Wilson v. Seiter*, 501 U.S. 294, 298-99 (1991); *Downey v. Denton County*, 119 F.3d 381, 385-86 (5th Cir. 1997).

To succeed on a claim of unconstitutional conditions of confinement, this Court "must ask if 'the officials act[ed] with a sufficiently culpable state of mind' and if the alleged wrongdoing was objectively 'harmful enough' to establish a Constitutional violation." *Hudson*, 503 U.S. at 8 (quoting *Wilson*, 501 U.S. at 298, 303). If the Court finds that either the subjective or objective component of the test is not met, it need not address the other component. *Davis*, 157 F.3d at 1006.

With respect to the objective component, the Supreme Court in *Wilson* noted that routine discomfort is part of the penalty that convicted prisoners pay for having committed crimes. Therefore, "only those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson*, 501 U.S. at 298 (quoting *Rhodes*, 452 U.S. at 347). "[E]xtreme deprivations are required to make out a conditions-of-confinement claim." *Hudson*, 503 U.S. at 9.

With respect to the subjective component of the test, the Supreme Court has applied a deliberate indifference standard. *Wilson*, 501 U.S. at 303. "Deliberate indifference" means that a

prison official is liable "only if he knows that the inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994).

> To establish deliberate indifference in the context of the Eighth Amendment, the prisoner must show that the defendants (1) were aware of facts from which an inference of an excessive risk to the prisoner's health or safety could be drawn and (2) that they actually drew an inference that such potential for harm existed.

*Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998) (citing *Farmer*, 511 U.S. at 837). "Under exceptional circumstances, a prison official's knowledge of a substantial risk of harm may be inferred by the obviousness of a substantial risk." *Id*. (citing *Farmer*, 511 U.S. at 842 n.8).

> The Supreme Court has recently reaffirmed that "deliberate indifference" is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. . . . The "deliberate indifference" standard permits courts to separate omissions that "amount to an intentional choice" from those that are merely "unintentionally negligent oversight[s]."

*Southard v. Tex. Bd. of Criminal Justice*, 114 F.3d 539, 551 (5th Cir. 1997) (citing *Bd. of County Comm'rs v. Brown*, 520 U.S. 397 (1997)) ( citations omitted) (emphasis added).

Gillum's complaint alleges that the living conditions of the facility were substandard, because the showers had mold and  the utensils were unsanitary. Gillum however, does not allege any harm or risk of serious harm in the constitutional sense, and the Court cannot perceive any under the circumstances described in Gillum's complaint. Although the conditions described by Gillum are seemingly uncomfortable and unpleasant, they do not rise to a level of a constitutional violation, as he does not allege that he suffered from any injury or ailment as a result of his confinement.

Furthermore, serving time in prison "is not a guarantee that one will be safe from life's occasional inconveniences." *Holloway v. Gunnel*, 685 F.2d 150, 156 (5th Cir.1982). Courts have repeatedly held "that the Constitution does not mandate prisons with comfortable surroundings or commodious conditions. *Bridges v. Gusman*, No. 06-4444, 2007 WL 2362335 (E.D. La. Aug. 15,

14

2007); (quoting *Talib v. Gilley*, 138 F.3d 211, 214 (5th Cir. 1998); (citing *Rhodes*, 452 U.S. at 349);

*accord Hernandez v. Velasquez*, 522 F.3d 556, 560 (5th Cir. 2008)).  For these reasons, short term

sanitation problems, although admittedly unpleasant, do not amount to constitutional violations.

*Whitnack v. Douglas County*, 16 F.3d 954, 958 (8th Cir. 1994); *Knop v. Johnson*, 977 F.2d 996, 1013

(6th Cir. 1992); *Robinson v. Ill. State Corr. Ctr.*, 890 F. Supp. 715, 720 (N.D. Ill. 1995).

"[J]ails must provide only reasonably adequate hygiene and sanitation conditions." *Burton v.

Cameron County*, 884 F. Supp. 234, 241 (S.D. Tex. 1995) (citing *Green v. Ferrell*, 801 F.2d 765, 771

(5th Cir.1986)); *accord Benshoof v. Layton*, No. 09-6044, 2009 WL 3438004, at *4 (10th Cir. Oct. 27,

2009); *Gates v. Cook*, 376 F.3d 323, 342 (5th Cir. 2004). *See also Davis*, 157 F.3d at 1006 (no

constitutional injury when plaintiff was confined in "filthy" cell for three days); *Cause v. Allison*, No.

08CV155-R.W., 2008 WL 4191746, at *1 (S.D. Miss. Sept. 9, 2008) (no Eighth Amendment violation

where prisoner claimed black mold was growing in the shower but "admits that he has had no medical

problems resulting from the black mold"); *McIntyre v. Phillips*, No. 07-527, 2007 WL 2986470, at

*2-4 (W.D. Mich. Sept. 10, 2007); *Easy v. Head*, No. CIVASA04CA0648 NN, 2006 WL 2663776,

at *3 (W.D. Tex. Sept. 15, 2006) ("Going without a shower and being exposed to the foul smell of a

backed-up shower for two days on two separate occasions does not show deliberate indifference to

Plaintiff's basic human needs or constitute cruel and unusual punishment in violation of the Eighth

Amendment.").

For the aforementioned reasons, Gillum's allegations about the conditions of his confinement

fall short of stating a constitutional violation, and should thus be dismissed as frivolous and otherwise

for failure to state a claim for which relief can be granted pursuant to § 1915(e), § 1915A, and § 1997e

### E.     The Denial of Access to Law Library

In his Amended Complaint, Gillum alleges that the defendants denied him access to the prison's law library. He alleges that he made a request for case law, but allegedly never received anything. He also alleges that access to the law library at the prison was slow, and that library collection was too small. He also alleges that the legal assistance was inadequate as prison officials did not supply him with paper or other supplies to help him.

Prisoners have a First Amendment right of meaningful access to the courts through adequate law libraries or assistance from legally trained personnel. *Bounds v. Smith*, 430 U.S. 817, 828 (1977); *Dickinson v. TX, Fort Bend County*, 325 Fed. App'x. 389, 390 (5th Cir. 2009); *Sandoval v. Johns*, 264 F.3d 1142, No. 00-41276, 2001 WL 822779, at *1 (5th Cir. June 29, 2001) (Table, Text in Westlaw); *McDonald v. Steward*, 132 F.3d 225, 230 (5th Cir. 1998); *Degrate v. Godwin*, 84 F.3d 768, 768-69 (5th Cir. 1996).  However, "[w]hile the precise contours of a prisoner's right of access to the courts remain somewhat obscure, the Supreme Court has not extended this right to encompass more than the ability of an inmate to prepare and transmit a necessary legal document to a court." *Vaccaro v. United States*, 125 F.3d 852, No. 96-60838, 1997 WL 574977, at *1 (5th Cir. Aug. 28, 1997) (quoting *Brewer v. Wilkinson*, 3 F.3d 816, 821 (5th Cir. 1993)); *Eason v. Thaler*, 73 F.3d 1322, 1328 (5th Cir. 1996).

To state a claim that his constitutional right of access to the courts was violated, Gillum must demonstrate "that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." *Lewis v. Casey*, 518 U.S. 343, 351 (1996).  He must also demonstrate that his position as a litigant was actually prejudiced.  *Lewis*, 518 U.S. at 356; *Cochran v. Baldwin*, No. 05-20100, 2006 WL 2418945, at *1 (5th Cir. Aug. 18, 2006); *Smith v. Polunsky*, 233 F.3d 575, No. 00-40362, 2000 WL 1468717, at *1 (5th Cir. Sep. 5, 2000); *Eason*, 73 F.3d at 1328.

Here, Gillum does not allege the essential element necessary to establish a First Amendment

claim. He does not allege that he was hindered in any particular civil or criminal proceedings due to the condition of the prison's law library. He also has not alleged or demonstrated that he suffered from any actual legal prejudice, which was caused by an action or omission at the fail. *See Lewis,* supra. "[C]ausation is an element of a section 1983 claim; [defendants'] actions must have actually caused the deprivation . . . of which [plaintiff] complains." *Hart v. O'Brien*, 127 F.3d 424, 446 (5th Cir.1997), *abrogated in part on other grounds as recognized in Spivey v. Robertson*, 197 F.3d 772 (5th Cir. 1999); *accord Brown v. Bryan County*, 219 F.3d 450, 457 (5th Cir. 2000). In *Lewis*, the Supreme Court made clear that an inmate must establish actual injury to state a claim for denial of his right of access to the courts. Gillum has made no such allegation here.

For the aforementioned reasons, Gillum's claim regarding inadequate access to the law library at the parish prison should be dismissed as frivolous and otherwise for failure to state a claim for which relief can be granted pursuant to § 1915(e), § 1915A, and § 1997e.

### F.   **The Denial of Recreation**

Gillum alleges that during the six months of his incarceration, he was only allowed out of his cell on four occasions. He alleges that this denial of access to recreation is a direct result of the deputy shortage, and violated his constitutional rights.

Inmates have no protected liberty interest in specific recreational opportunities and the "[d]eprivation of exercise is not a per se constitutional violation." *Lewis v. Smith*, 277 F.3d 1373, No. 00-31371, 2001 WL 1485821, at *1 (5th Cir. Nov. 13, 2001) (Table, Text in Westlaw) (citing *Stewart v. Winter*, 669 F.2d 328, 336 n.19 (5th Cir. 1982); *Miller v. Carson*, 563 F.2d 741, 751 n.12` (5th Cir.1977)); *accord Sampson v. Corrs. Corp.*, No. 08-CV-0915, 2009 WL 837640, at *16 (W.D. La. Mar. 26, 2009) (citing *Smith v. Boyd*, 945 F.2d 1041, 1043 (8th Cir. 1991); *Beck v. Lynaugh*, 842 F.2d 757, 762 (5th Cir. 1988); *Lato v. Attorney Gen.*, 773 F. Supp. 973, 978 (W.D. Tex. 1991)). "[W]hat

is constitutionally required, however, is that [the prisoner] not be confined for long periods without the opportunity for regular physical exercise." *Lewis*, 2001 WL 1485821, at *1 (citing *Ruiz v. Estelle*, 679 F.2d 1115, 1152 (5th Cir. 1982), *amended in part, vacated in part on other grounds*, 688 F.2d 266 (5th Cir. 1982)).

Thus, to succeed on a claim under § 1983 for lack of exercise, a prisoner must set forth facts sufficient to "support the existence of any health hazard under the specific circumstances involved." *Ruiz*, 679 F .2d at 1152; *accord Delaney v. DeTella*, 256 F.3d 679, 684 (7th Cir. 2001); *Ordaz v. Lynaugh*, 20 F.3d 1171, No. 93-4290, 1994 WL 144882, at *4 (5th Cir. Apr. 15, 1994) (Table, Text in Westlaw); *Green*, 801 F.2d at 771. Gillum has not alleged the existence of any health hazard other than some muscle deterioration, as a result of his lack of exercise during his confinement.

Furthermore, to state a claim under § 1983, a plaintiff must also allege an actual injury caused by defendants' acts. *See Oliver v. Collins*, 904 F.2d 278, 281 (5th Cir.1990) (claims properly dismissed when plaintiff failed to allege sufficient causal connection between defendants' conduct and the claimed assault, and when plaintiff did not allege constitutional harm); *Auster Oil & Gas, Inc. v. Stream*, 835 F.2d 597, 602 (5th Cir.1988) (citing *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 307 (1986)) (§ 1983 is designed to compensate persons for actual injuries caused by deprivation of constitutional rights); *Jefferson v. City of Hazelhurst*, 936 F.Supp. 382, 386 (S.D.Miss.1995) (To state a claim under§ 1983, a plaintiff must plead a "direct causal connection ... without intervening factors, between the deprivation and some injury to plaintiff.").

Gillum fails to allege or establish any constitutional violation arising from alleged denial of recreational opportunities. He fails to identify any particular physical injuries resulting from his alleged denial of recreation, or that he was deprived of recreation for any significant time period in violation of his constitutional rights due to his alleged limitations on his exercise in prison. *See Hernandez*, 522

18

F.3d at 560 (inmate who alleged that he was deprived of outdoor and out-of-cell exercise for thirteen months while in lockdown and that he suffered muscle atrophy, stiffness, loss of range of motion, and depression failed to show either that he was placed at substantial risk of serious harm or that he suffered a serious illness or injury sufficient to constitute an Eighth Amendment violation); *Ordaz*, 1994 WL 144882, at *4 (plaintiff failed to state a constitutional violation resulting from denial of recreation when he failed to allege health impairment or physical injury).

As such, Gillum fails to state a cognizable § 1983 claim regarding the alleged denial of recreation by defendants. For the aforementioned reasons, Gillum's claim should be dismissed as frivolous and otherwise for failure to state a claim for which relief can be granted pursuant to § 1915(e), § 1915A, and § 1997e.

### G.     The Inadequate Grievance Process

Gillum alleges that the grievance procedures at the prison are inadequate, as his grievance was not responded to for four months. As a result, Gillum also brought a claim against Warden Golini for his "automatic denial of all grievances."

The filing of prison grievances is a constitutionally protected activity. *Robinson v. Taylor*, 204 Fed. App'x. 155, 157 (3rd Cir.2006) (unpublished). To the extent that plaintiff bases his claims upon his dissatisfaction with the grievance procedure or denial of his grievances, the claims fail because an inmate does not have a "free-standing constitutionally right to an effective grievance process." *Woods v. First Corr. Med., Inc.*, 446 Fed. App'x. 400, 403 (3d Cir.2011) (citing *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir.1991)).

Here, Gillum cannot maintain a constitutional claim based upon his perception that his grievances were not properly processed, that they were denied, or that the grievance process is inadequate. For the aforementioned reasons, Gillum's claim should be dismissed as frivolous and

otherwise for failure to state a claim for which relief can be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and § 1915A(b)(1).

H. **Untrained, Understaffed Nurses & Deputies & Inadequate Medical Intake Procedures**

 Gillum alleges that the nurses and deputies are understaffed, untrained and overworked. Although he does not allege that he sustained any physical injury as a result of the staffing problems at the prison, he alleges that something could have happened.

Gillum also alleges that the medical intake procedure at the prison is inadequate because of how long it took for the prison officials to administer his medications, even after he allegedly reported the medications he was taking to the deputies. He also alleges that the procedure is flawed because of how long inmates must wait for an intake examination.

Title 42 U.S.C. § 1997e(e) provides that "no Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." The "physical injury" required by § 1997e(e) must be more than *de minimis,* but need not be significant. *Harper v. Showers,* 174 F.3d 716, 719 (5th Cir.1999) (citing *Siglar v. Hiahtower,* 112 F.3d 191 (5th Cir.1997)).

Even if Gillum's allegations are correct that the deputies and nurses are untrained, understaffed and overworked, he has not alleged any physical injury that is more than *de minimis*. As a result, Gillum's claim should be dismissed as frivolous and otherwise for failure to state a claim for which relief can be granted pursuant to 42 U.S.C. § 1997e(e)

I.      **The Loss of the Partial Dental Plate**

Lastly, Gillum alleges during the *Spears* hearing, Deputy Barnes (who is not named as a Defendant in this action) discarded some of his personal belongings, including his partial dentures plate while conducting a prison sweep. As a result, Gillum seeks damages for the loss of his partial plate.

This claim implicates the due process clause of the Fourteenth Amendment. The Due Process Clause provides "nor shall any State deprive any person of life, liberty, or property, without due process of law." United States Constitution, Amendment XIV. Here, plaintiff complains that he was deprived of property—his dentures.

A claim for random deprivation of personal property is not cognizable under § 1983. In *Parratt v. Taylor,* 451 U.S. 527, 544, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), a prisoner claimed that prison officials had negligently deprived him of his personal property without due process of law. The Supreme Court held that the prisoner was "deprived" of his property within the meaning of the Due Process Clause of the Fourteenth Amendment. However, the Court ruled that the State's post-deprivation tort remedy provided all the process that was due. *Parratt,* 451 U.S. at 536–37. The Due Process Clause does not embrace tort law concepts. Although a litigant may be afforded a remedy under state tort law for deprivation of property, the Fourteenth Amendment does not afford such a remedy. *Daniels v. Williams,* 474 U.S. 327, 335, 106 S.Ct. 662, 667, 88 L.Ed.2d 662 (1986).

Even when an individual has been deprived of his property without due process of law, random and unauthorized deprivations of property by state officials, whether negligent or intentional, do not violate the Due Process Clause if an adequate post-deprivation state remedy exists. *Alexander v. Ieyoub*, 62 F.3d 709, 712 (5th Cir.1995) (citing *Hudson v. Palmer*, 468 U.S. 517 (1984); *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part on other grounds by Daniels v. Williams*, 474 U.S. 327

(1986)); *accord Wilson v. Holt*, 158 Fed. App'x 546, 546 (5th Cir.2005). *See also Davis v. Bayless,* 70 F.3d 367 (5th Cir.1995); *Murphy v. Collins,* 26 F.3d 541 (5th Cir.1994). As such, Gillum's claim regarding his dentures would likely amount to a state law claim of an intentional act or of negligence, neither of which is cognizable under 42 U.S.C. § 1983.

This principle (known as the *Parratt/Hudson* doctrine) rests on the premise that because the state is unable to predict random and unauthorized conduct, pre-deprivation remedies are unfeasible. *Davis,* 70 F.3d at 375, *citing, Zinermon v. Burch,* 494 U.S. 113, 128–32, 110 S.Ct. 975, 985–86, 1098 L.Ed.2d 100 (1990) (distinguishing between random unauthorized conduct and a deprivation which results from predictable conduct authorized by a State).

The Fifth Circuit has clearly recognized that Louisiana tort laws under LA. CIV. CODE art. 2315 *et seq*. provide an adequate remedy for both intentional and negligent deprivations of property. *Hutchinson v. Prudhomme*, 79 Fed. App'x 54, 55 (5th Cir.2003); *Copsey v. Swearingen*, 36 F.3d 1336, 1342-43 (5th Cir.1994); *Marshall v. Norwood*, 741 F.2d 761, 764 (5th Cir.1984). This provides a remedy / opportunity for a prisoner, such as Gillum, to seek redress under Louisiana's general tort law for the alleged negligence or intentional tort committed by either prison officials or by their employees. *See e.g., Charbonnet v. Lee,* 951 F.2d 628 (5th Cir.), *cert. denied,* 505 U.S. 1205 (1992). Because this provision of Louisiana law provides an opportunity for redress, Gillum's claim does not implicate the Fourteenth Amendment Due Process Clause, and is barred by the *Parratt/Hudson* doctrine.

For the aforementioned reasons, Gillum's claim should be dismissed as frivolous and otherwise for failure to state a claim for which relief can be granted because his constitutional rights were not violated when his partial dentures plate was taken.

## IV.    Recommendation

It is therefore **RECOMMENDED** that Plaintiff, Arthur Eugene Gillum, Jr.'s ("Gillum") claims

be **DISMISSED WITH PREJUDICE** as frivolous and otherwise for failure to state a claim for which relief can be granted pursuant to 28 U.S.C. § 1915(e), § 1915A and 42 U.S.C. §1997e.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[18]

New Orleans, Louisiana, this 13th ay of January, 2014.

_____
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[18]*Douglass* referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.